UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES -- GENERAL

Case No.     LA CV 09-08374-VBF-JC          Dated:      May 2, 2014

Title:     *Ricardo Richard Hernandez, Petitioner v. Francisco Jacques (Warden),*
           *Respondent*

PRESENT:     HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

           N/A                              N/A
           Courtroom Deputy                 Court Reporter

ATTORNEYS PRESENT FOR PETITIONER     ATTORNEYS PRESENT FOR RESPONDENT

           N/A                              N/A

PROCEEDINGS (IN CHAMBERS):     ORDER     **(1)   Adopting Report & Recommendation;**
                                         **(2)   Denying Habeas Corpus Petition for**
                                         **       Lack of Merit;**
                                         **(3)   Directing the Separate Entry of Final**
                                         **       Judgment;**
                                         **(4)   Denying a Certificate of Appealability**

   Proceeding *pro se*, California state prisoner Ricardo Richard Hernandez brought this action for habeas corpus relief pursuant to 28 U.S.C. section 2254. The Honorable Jacqueline Chooljian, United States Magistrate Judge, has issued a well-reasoned Report and Recommendation recommending that the habeas petition be denied for lack of merit, and petitioner neither filed objections nor sought an extension of time in which to do so. For the reasons that follow, the Court will adopt the R&R, deny the petition for lack of merit, and deny a certificate of appealability. Finally, as required by Federal Rule of Civil Procedure 58(a)(1), the Court will direct the entry of final judgment in favor of the respondent and against the petitioner by separate document.

MINUTES FORM 90                          Initials of Deputy Clerk ____jmb____
CIVIL - GEN

ABBREVIATED BACKGROUND

Victim Gutierrez, who had tattoos on his hands and arms but was not a gang member, went to play basketball in Montecito Park, where members of the Avenues gang congregated and drew gang graffiti. Park employee Arrieta, who had known petitioner for ten years, spoke with petitioner near the gym, observing that a thin, dark-skinned boy standing 5'3" was with him and that both petitioner and the boy had bicycles. Arrieta recalled seeing the boy previously with petitioner's codefendant, Aguirre, whom Arrieta had also known for ten years. Petitioner warned Arrieta to "watch out" for people who might misinterpret Arrieta's tattoos, explaining "we're just looking to cap fools that are all tatted down." Arrieta saw petitioner glaring at a man named Andres, who was wearing a black L.A. hat and talking to a man seated in the driver's seat of a dark SUV near the park entrance. According to Arrieta, petitioner asked Arrieta who the men were and said that Andres seemed to be "dogging" him. *See* R&R at 3. Another park employee, Sanchez, was playing or refereeing basketball when he saw petitioner and Aguirre in the gym for about 10-15 minutes, then saw petitioner enter the gym's office, and later saw petitioner with a bicycle outside the gym. *See* R&R at 3. Park director Enriquez was in the gym office just before 3:00 pm when a young man entered the office and asked if the park's former director was there; when Enriquez answered no, the young man identified himself as "Richie Boy" and told him not to worry about the bald guys outside as Richie Boy "had them under control." *See* R&R at 4. There were four eyewitnesses to petitioner's subsequent shooting of the victim: park employee Sanchez, park director Enriquez, and 15-year-old Ivonne and her 12-year-old brother Carlos. *See* R&R at 4, 6, and 9. The Court leaves the details of those eyewitnesses' testimony and identification of petitioner to the analysis of his insufficient-evidence claims.

ABBREVIATED PROCEDURAL HISTORY

In 2006 an L.A. County Superior Court jury found petitioner guilty of the first-degree murder of Efren Gutierrez, and further found that (1) codefendant Aguirre personally and intentionally discharged a firearm which proximately caused Gutierrez's death and (2) the murder was committed for the benefit of, at the direction of, or in association with a gang with the specific intent to promote, further or assist criminal conduct by gang members ("the gang enhancement"). The state trial court sentenced petitioner to fifty years to life in prison, and on direct appeal the petitioner raised insufficient-evidence and instructional-error claims which correspond to

MINUTES FORM 90                                              Initials of Deputy Clerk  ____jmb____
CIVIL - GEN

the claims asserted herein, as well as a claim of prosecutorial misconduct.  The California Court of Appeal affirmed in a reasoned decision, *People v. Ricardo Hernandez*, No. B199067, 2008 WL 3974176 (Cal. App. Aug. 28, 2008), rejecting petitioner's arguments on the merits, and the California Supreme Court issued an order summarily denying petitioner's ensuing petition for review without comment or citation of authority (LD 7).

ANALYSIS:  PETITIONER'S CHALLENGE TO HIS FIRST-DEGREE MURDER CONVICTION BASED ON INSUFFICIENT IDENTIFICATION EVIDENCE LACKS MERIT

**For the reasons stated by the Magistrate Judge (R&R at 15-20), petitioner fails to show that the California Court of Appeal committed AEDPA error by rejecting his claim on direct appeal that the evidence was insufficient to support his first-degree murder conviction.**

There are no errors in the Report's brief statement of the AEDPA legal standard, R&R at 14-15, or in its statement that a federal habeas court's AEDPA review of the sufficiency of the evidence is constrained by two layers of deference.  *See* R&R at 15 (citing *Coleman*, 132 S. Ct. at 2062); *see, e.g., Chavarria v. Busby*, 533 F. App'x 720, 721 (9th Cir.) ("Reviewing with the 'two layers of judicial deference' applicable to *Jackson* claims in federal habeas proceedings, *Coleman* . . . , we affirm."), *cert. denied*, – U.S. –, 134 S. Ct. 346 (2013).[1]

As the Report notes, the first layer is the deference which all courts accord to a factfinder, which directs the reviewing court even on direct appeal not to disturb the factfinder's verdict unless no rational trier of fact could have found all the elements of the crimes of conviction beyond a reasonable doubt, *see* R&R at 15-16 (citing, *inter alia, Cavasos*, 132 S. Ct. at 4, and *Jackson*, 443 U.S. at 319), so-called *Jackson* deference.  *See also Wright v. West*, 505 U.S. 277, 284, 112 S. Ct. 2482 (1992).  The Supreme Court recently reemphasized the

---

[1]

For petitions governed by AEDPA, a federal habeas court "evaluate[s] a state court's resolution of a *Jackson* sufficiency-of-the-evidence claim in all cases under 28 U.S.C. § 2254(d)(1)," which concerns unreasonable application of or rulings contrary to clearly established federal law, "rather than § 2254(d)(2)", which concerns unreasonable determinations of fact.  *See Sarausad v. Porter*, 479 F.3d 671, 678, *vac'd in part on other grounds*, 503 F.3d 822 (9th Cir. 2007); *see, e.g., Flores v. Beard*, 533 F. App'x 730, 731 n.1 (9th Cir.) (citing *Sarausad* in declining to consider 2254 claim that state court unreasonably determined the facts in rejecting his claim that evidence was insufficient to support conviction for conspiracy to commit murder), *cert. denied*, – U.S. –, 134 S. Ct. 797 (2013).

MINUTES FORM 90                                                    Initials of Deputy Clerk ____jmb____
CIVIL - GEN

strength of *Jackson* deference, stating that "[u]nder *Jackson*, the only question to be asked about a jury's finding is whether it was 'so insupportable as to fall below the threshold of bare rationality.'" *Naba v. Busby*, 2013 WL 5964597, *3 (C.D. Cal. Nov. 7, 2013) (quoting *Coleman v. Johnson*, – U.S. –, 132 S. Ct. 2060, 2065 (2012)).

The second layer is the deference AEDPA adds to federal collateral review of a state court's ruling on the merits of any federal constitutional claim: "'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. [It] may do so instead only if the state court decision was 'objectively unreasonable.'" R&R at 16 (quoting *Coleman*, 132 S. Ct. at 2065); *see also Cavazos v. Smith*, – U.S. –, 132 S. Ct. 2, 4 (2011) (cite omitted); *Shoemaker v. Taylor*, 730 F.3d 778 (9th Cir. 2013) ("Nor was the state court objectively unreasonable to reject Shoemaker's claim that insufficient evidence existed to support his conviction for duplicating child pornography.").

The Supreme Court has emphasized that the question whether a state court unreasonably applied federal law (in this case *Jackson v. Virginia*) is "a substantially higher threshold" than the question whether the state court's determination was merely incorrect. *See Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933 (2007). For habeas relief under AEDPA, "'it is not enough that we would reverse in similar circumstances this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the" verdict was supported by sufficient evidence.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (quoting *Landrigan*, 550 U.S. at 473), *cert. denied*, – U.S. –, 133 S. Ct. 1262 (2013).

**In Ground Two, petitioner contends that the evidence presented at trial was insufficient for a rational jury to find that he committed first-degree murder by aiding and abetting because the witnesses were unreliable.** The Magistrate correctly consults California state law for the elements of first-degree murder, *see* R&R at 16 (citing *Jackson*, 443 U.S. at 324 n.16); *see also Hale v. McDonald*, 537 F. App'x 731 (9th Cir. 2013) (citing *Emery v. Clark*, 643 F.3d 1210, 1214 (9th Cir. 2011)), *cert. denied* – U.S. –, 134 S. Ct. 1550 (2014). The relevant state law in this case begins with CAL. PENAL CODE § 187(a)'s definition of murder as the unlawful

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk _____jmb_____

killing of a human being with malice aforethought and CAL. PENAL CODE § 189's definition of *first-degree* murder as any kind of "willful, deliberate, and premeditated killing", R&R at 17.

**The Magistrate rightly rejects petitioner's claim that the state court unreasonably applied federal law because none of the witnesses identified him in court as a participant in the murder.  The Magistrate errs, however, in relying on Ninth Circuit precedent** for the proposition that the testimony of a single witness, if believed, is sufficient to prove a perpetrator's identity, *see* R&R at 17.  **The Magistrate likewise errs in relying on California state decisions** for the proposition that even a single out-of-court identification is sufficient by itself to support a conviction if it is supported by substantial evidence, *see* R&R at 17-18.

Because this petition is covered by AEDPA, this Court could award habeas relief only if petitioner showed that the state courts ruled contrary to or unreasonably applied some holding *of the U.S. Supreme Court*. Ninth Circuit holdings are <u>not</u> part of "clearly established federal law" for purposes of AEDPA; rather, "[f]or state prisoners who seek federal habeas relief pursuant to 28 U.S.C. § 2254, AEDPA requires them to show that a state court violated 'clearly established Federal law', defined for that purpose as only the holdings (as opposed to dicta) of the United States Supreme Court at the time of the relevant [state-court] decision." *US v. Sayre*, 2013 WL 3872172, *10 (C.D. Cal. Apr. 30, 2013) (Fairbank, J.) (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495 (2000) ("The . . . statutory language makes clear . . . that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.") and *Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649 (2006)).

As the Supreme Court put it, "If this Court has not broken sufficient legal ground to established an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381, 120 S. Ct. at 1506-07.  "'This is a retrenchment from former practice, which allowed the United States courts of appeals to rely on their own jurisprudence in addition to that of the Supreme Court.'"  *Williams*, 529 U.S. at 381, 120 S. Ct. at 1507 (citation omitted). Consequently, "'[o]nly the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied' for a state-court decision to survive AEDPA review." *Sayre*, 2013 WL 3872172 at *10 (quoting *Moses v. Payne*, 555 F.3d 742, 759 (9th Cir. 2009)); *see also Clark v. Murphy*, 331 F.3d 1062, 1069

MINUTES FORM 90                                    Initials of Deputy Clerk    ____jmb____
CIVIL - GEN

(9th Cir. 2003).[2]  This statutory "formulation [of clearly established federal law]" is so strictly applied that it generally excludes not only circuit precedent but even "concurring . . . opinions of individual Justices" of the Supreme Court.  *See Jackson v. Calter*, 337 F.3d 74, 84 (1st Cir. 2003).

      **In 2013, the Ninth Circuit issued a published decision reiterating its view that "[a]lthough only Supreme Court holdings are binding on state courts,' 'circuit precedent may provide persuasive authority** for purposes of determining whether a state court decision is an 'unreasonable application' of Supreme Court precedent.'" *Dyer v. Hornbeck*, 706 F.3d 1134, 1139 (9th Cir.) (quoting *Rodgers v. Marshall*, 678 F.3d 1149, 1155 (9th Cir. 2012) (citing *Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir. 2009))), *cert. denied sub nom. Dyer v. US*, 134 U.S. 82, – S. Ct. – (2013).  This is consistent with past Ninth Circuit AEDPA decisions, *see, e.g., Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (citing *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999)) and *Barajas v. Wise*, 481 F.3d 734, 740 (9th Cir. 2007) ("Although AEDPA directs district courts to look to Supreme Court decisions to determine 'clearly established federal law,' circuit precedent is informative."), *vac'd on grant of panel reh'g*, 506 F.3d 736 (9th Cir. 2007), *vac'd & superseded on other grounds on reh'g*, 2007 WL 3105756 (9th Cir. Oct. 22, 2007).  The *Dyer* panel's statement about circuit precedent is flatly *in*consistent, however, with the Supreme Court's 2013 decision in *Rodgers*.

      **The decision which the *Dyer* panel quoted as authority to consider circuit precedent as "persuasive authority" under AEDPA – *Rodgers*, 678 F.3d 1149 – was reversed by the Supreme Court months later,** *see Rodgers v. Marshall,* **– U.S. –, 133 S. Ct. 1446,** *reh'g denied***, – U.S. –, 133 S. Ct. 2408 (2013).**  As Judge Gutierrez of our court explains *Rodgers*,

      the Supreme Court reversed a Ninth Circuit decision granting habeas relief to a defendant who waived his right to counsel, was convicted, and sought (but was denied) the reappointment of

---

2

      In the same vein is *Grant v. Trammell*, 727 F.3d 1006 (10th Cir. 2013), *pet. cert. filed*, – U.S. – (u.s. Apr. 2, 2014) (Nos. 13-9556 and 13A766), issued in the wake of *Rodgers*, where the Tenth Circuit stated, "Of course we can only fault the [Oklahoma Court of Criminal Appeals] for failing to abide Supreme Court precedent, not our own."  *Grant*, 727 F.3d at 1010 (citing 28 U.S.C. § 2254(d)(1) and going on to discuss *Marshall*).

MINUTES FORM 90                                        Initials of Deputy Clerk ____jmb____
CIVIL - GEN

counsel for the purpose of bringing a motion for new trial, finding that *the Ninth Circuit's reliance on circuit precedent as the basis for finding Section 2254(d)(1) satisfied constituted "error."*

*Saldivar v. Uribe*, 2013 WL 3946106, *7 (C.D. Cal. July 31, 2013) (emphasis added). **Indeed, even before *Marshall*, the Supreme Court had reversed other circuit courts that had measured the propriety of habeas relief in AEDPA cases according to circuit precedent.** The Court here relies on *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649 (2006), and even more so on *Miller v. Rodriguez*, 549 U.S. 1163, 127 S. Ct. 1119 (2007). As a sister circuit recently explained,

> * * *  In *Musladin* the Supreme Court held that Supreme Court law was not clearly established under circumstances in which circuit courts "diverged widely" in their interpretations of the law. * * *

> * * *  In the original *Rodriguez v. Miller* disposition ("*Rodriguez I*") the Second Circuit granted habeas based on [the Supreme Court's decision in] *Waller interpreted through the lens of Second Circuit precedent*.  The Supreme Court then vacated and remanded the case for reconsideration in light of *Musladin*. * * *

> In the *Rodriguez* cases, the defendant challenged the exclusion of his family from the courtroom but conceded that the exclusion of the rest of the public was consistent with [the Supreme Court's decision in] *Waller*.  In *Rodriguez I*, the Second Circuit held that clearly established federal law placed a particular emphasis on allowing defendants to have family in the courtroom.  This holding was based on *Waller as construed in prior Second Circuit cases*.  Finding that exclusion of family members "requires stricter scrutiny than" exclusion of members of the public – something not discussed by the Supreme Court in *Waller* – the Second Circuit held that Rodriguez's Sixth Amendment right to a public trial had been violated.

> On appeal, the Supreme Court vacated and remanded this holding in light of *Musladin*.  *The Second Circuit interpreted the Supreme Court's directive on remand as an admonishment to apply only Supreme Court holdings as "clearly established federal law"' under § 2254(d)(1) and that the decisions of the courts of appeals cannot provide clearly established federal law. Rodriguez II*, 537 F.3d at 109.

MINUTES FORM 90                                    Initials of Deputy Clerk ____jmb____
CIVIL - GEN

-7-

> Because the Second Circuit had relied on its own precedent to differentiate Rodriguez's family from the general public, it was obligated to find [on remand] that the state court had not unreasonably applied the [Supreme Court's] *Waller* test . . . . *Id.* at 109-110 (noting that "*Waller* does not demand a higher showing before excluding a defendant's friends and family" and "AEDPA is concerned only with *Waller*'s holding:  that a courtroom closure must pass its four-part test.").

*Drummond v. Houk*, 728 F.3d 520, – (6th Cir. 2013) (J. Cole, joined by J. Griffin) (emphasis added) (internal citations and quotation marks omitted), *cert. granted on other grounds and judgment vac'd sub nom. Robinson v. Drummond*, No. 13-496, – U.S. –, – S. Ct. –, 2014 WL 1659800, 82 U.S.L.W. 3262 (Apr. 28, 2014) (remanding for further consideration in light of *White v. Woodall*, 572 U.S. –, – U.S. – (2014)); *see also Holley v. Yarbrough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (holding that federal habeas relief was unavailable where state trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but was not contrary to or an unreasonable application of any U.S. Supreme Court holding).

**Therefore, this Court emphasizes that it has considered Circuit decisions only for the limited purpose permitted by *Musladin* and *Marshall*:  "to ascertain whether [the Circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent[.]"** *See Marshall,* – U.S. –, 133 S. Ct. at 1451; *see, e.g., Lemke v. Ryan*, 719 F.3d 1093, 1101 (9th Cir. 2013) ("Although the clearly established law required by § 2254(d)(1) must be found in Supreme Court, not circuit court, decisions, we may examine our own precedent to see whether we are bound by one of our decisions that 'has already held that the particular point in issue is clearly established by Supreme Court precedent.") (quoting *Marshall*, 133 S. Ct. at 1450); *Biggs v. Sec'y of Calif. DOC*, 717 F.3d 678, 690 (9th Cir. 2013) (after *Marshall*, circuit precedent is relevant only if prior circuit precedent had held that *a Supreme Court holding* had clearly established some proposition, e.g., "we would owe deference to a clear on-point holding [by the Circuit] that as-applied analysis is required under clearly established federal law [in the form of a Supreme Court holding] in this context").

This Court has not held the California state courts to compliance with the holdings of any Ninth Circuit decision, nor has this Court "canvass[ed]" Ninth Circuit decisions or "circuit decisions [around the country] to

determine whether a[ny] particular rule of law is so widely accepted among the Federal circuits that it would, if presented to [the Supreme] Court, be accepted as correct", which is also expressly prohibited by *Marshall*, 133 S. Ct. at 1451.  **Specifically, this Court disclaims any impression the R&R may have given that we have used Ninth Circuit holdings regarding eyewitness identification of perpetrators "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced"**, *Rodgers v. Marshall*, 2013 WL 3819551, *1 (C.D. Cal. July 19, 2013) (on remand from and quoting *Marshall*, 133 S. Ct. at 1450).  **A Ninth Circuit panel also applied *Marshall* in *New v. Uribe***, 532 F. App'x 743 (9th Cir.), *cert. denied*, – U.S. –, 134 S. Ct. 701 (2013), stating,

> The relevant Supreme Court precedents explicitly decline to set out a clear test for balancing justification against prejudice . . . .  In light of the lack of a clear test, we cannot say that the state court applied Supreme Court law in a manner that was objectively unreasonable in finding that the justification here outweighed the prejudice.  * * *  Nor can we say that the state court unreasonably applied clearly established Supreme Court law by noting that a federal due process claim based on pre-indictment delay requires a showing that the delay was undertaken by the State to gain a tactical advantage over the defendant.  *Though our court has held that there is no such requirement, other courts, including the California Supreme Court, disagree.  It was not unreasonable for the state court to side with the California Supreme Court . . . .  [This is because] 'circuit precedent may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced.'"*

*New*, 532 F. App'x at – (internal citations omitted) (emphasis added) (citing *Marshall*, 133 S. Ct. at 1450); *see also Mikell v. Williams*, 528 F. App'x 713, 715 (9th Cir. 2013) ("The circuit precedents cited by Mikell are not 'clearly established Federal law' under 28 U.S.C. § 2254(d)(1) . . . .") (citing *Marshall*, 133 S. Ct. at 1450-51, and *Ortiz-Sandoval*, 323 F.3d at 1172); *Davis v. Allison*, 2013 WL 4046645, *1 (C.D. Cal. Aug. 9, 2013) (rejecting section 2254 petitioner's argument that Magistrate had "ignore[d] circuit precedent that holds a mandatory parole term is a direct consequence of a guilty plea" and adopting determination that habeas relief was not warranted because "no holding of the Supreme Court clearly establishes that a defendant must be advised of the length of a parole term").  Also in accord is *McCollister v. Cameron*, 535 F. App'x 187 (3d Cir. 2013), *cert. denied*, – U.S. –, 134 S. Ct. 1298 (2014), where the Third Circuit cited *Rodgers* to conclude as follows:

McCollister's reliance on our decisions in . . . *Booker* . . . (3d Cir. 2012) . . . and . . . *Moskovits* (3d Cir. 1996), is unavailing.  Although those decisions, which involved direct appellate review of the validity of a waiver of counsel, bear some factual similarities to McCollister's situation, they cannot be 'used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.  It is only the precedents of our High Court that set the boundaries of our review of the validity of a state court conviction.

*Id.* at *3 (bracketed text in original).  *Accord Gomez v. Thaler*, 526 F. App'x 355 (5th Cir. 2013), *cert. denied*, – U.S. –, 134 S. Ct. 1513 (2014), where a Tenth Circuit panel held as follows:

In a direct appeal context, Gomez would have a compelling argument that a suppression is a 'critical stage' of a criminal proceeding under *Cronic* . . . .  However, because he presents this issue in a habeas context, AEDPA's limited standard of review constrains us.  * * *  As the Supreme Court has not yet held that a suppression hearing is a "critical stage"' . . . , however, this fact ends our inquiry with respect to Gomez's petition.

*Gomez*, 526 F. App'x at ___ n.3 (citing *Marshall*, 133 S. Ct. at 1451).  *Accord Proulx v. Brazelton*, 2013 WL 5946543, *5 (N.D. Cal. Nov. 5, 2013) ("Proulx correctly notes that some courts have distinguished between an equivocal request and a 'conditional' request [to proceed pro se], *see, e.g., Adams*, 875 F.2d at 1445, but the distinction does not help him under the circumstances.  Circuit[-]level authority does not suffice for relief under § 2254(d).  * * *  *Faretta* [U.S.] is the only relevant holding, and that case does not elaborate on any standard for determining whether a request is unequivocal.").

**Thus, this Court's rejection of Ground 2's sufficiency-of-the-evidence claim's "identification" subclaim is based not on *Smith* or *Gudino* or other Ninth Circuit precedent, and not on California state decisions, but on the state of Supreme Court precedent alone.**  Namely, petitioner identifies no Supreme Court decision holding either that (1) the Constitution requires the identification of the perpetrator of a crime to be based on the testimony of more than one eyewitness or that (2) the U.S. Constitution requires the identification of a perpetrator of a crime to be based on at least some in-court testimony rather than only on prior out-of-court statements, and the Court finds no such Supreme Court holdings.

   **The Court thus evaluates the California Court of Appeal's rejection of petitioner's identification-based insufficient-evidence claim only for compliance with the holdings of the U.S. Supreme Court, especially *Jackson v. Virginia*.**  It was not an unreasonable application of *Jackson* for the California Court of Appeal to determine that the evidence was sufficient to support the jury's finding that petitioner was the person identified as aiding and abetting codefendant Aguirre's first-degree murder of the victim, because as the Magistrate points out, although park employee Sanchez did not identify petitioner as the aider and abettor in court, Sanchez testified that he had been threatened by apparent Avenues gang members a couple hours after the shooting that if he said "something it was going to be your ass", which he took to be a threat to kill him and/or his family.  Sanchez also testified that he had previously picked petitioner out of a photographic line-up as the person who had entered the victim's car to hit the victim and had then exited the car and run to the driver's side where Aguirre then shot the victim.  *See* R&R at 18 (record citations omitted).

   **The Magistrate rightly reasons that the state court could reasonably determine it was within a rational jury's province to infer that Sanchez's failure to identify petitioner at trial was a product of his fear following the threats shouted at him after the shooting and that his earlier out-of-court identification of petitioner should be credited instead**.  *See* 3 RT 719-723 and 726 and 4 RT 866 (Sanchez testified that he believed the car's occupants who shouted at him were members of the Avenues gang and their threat scared him); 4T 802-805, 815-821, 831-832, 841, and 866, and 9 RT 1744-1745 and 1763 (testimony that Sanchez had identified petitioner's photo from an array as that of "the older man, who entered the SUV and hit" the victim).

   **First, even at the trial level or on direct appeal, it has long been "[a] fundamental premise of our criminal trial system . . . that the *jury* is the lie detector",** *US v. Scheffer*, 523 U.S. 303, 313, 118 S. Ct. 1261, 1266 (1998) (citation and internal quotation marks omitted), and if a witness's "testimony be competent, its weight and credibility [a]re alone for the province of the jury; they having believed him, and having found their verdict for the defendants, there is no rule by which [a] . . . court on error would be authorized to disturb the verdict." *United States v. Boyd*, 46 U.S. (5 How.) 29, 1847 WL 5985 (Jan. Term 1847)).  *See also Perry v. NH*, – U.S. –, –, 132 S. Ct. 716, 723 (2012) ("'Our legal system . . . is built on the premise that it is the province of the jury to judge the credibility of competing witnesses . . . .'") (quoting *Kansas v. Ventris*, 556 U.S. 586, 594

MINUTES FORM 90                                        Initials of Deputy Clerk   ____jmb____
CIVIL - GEN

n.*, 129 S. Ct. 1841, 1847 n.* (2009)); *Galloway v. US*, 319 U.S. 372, 405, 63 S. Ct. 1077, 1095 (1943) ("It was also their [the jury's] province to judge of the credibility of the witnesses, and the weight of their testimony . . . . as these were matters with which the court could not interfere . . . .'") (quoting *Ewing's Lessee v. Burnet*, 36 U.S. (11 Pet.) 41, 1837 WL 35467 (U.S. Jan. Term 1837)).  More specifically, as the Magistrate notes, when a convicted criminal defendant challenges the sufficiency of the evidence, the jury's credibility determinations are entitled to "near-total deference under *Jackson*."  *See* R&R at 19 (quoting *Bruce*, 376 F.3d at 957).

The Court recognizes that Circuit precedent holds that, at least on direct appeal, a reviewing court need not sustain a conviction in deference to the jury's assessment of credibility where a witness's uncorroborated testimony is "incredible or insubstantial on its face."  *See US v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986); *see also US v. Alvarez*, 358 F.3d 1194 (9th Cir. 2004).  It appears that *the Supreme Court* has never so held, however, let alone in the context of federal *collateral* review of a state court's deference to a jury's credibility assessments.

Next, it is true that "[t]he constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt . . . impedes convictions based on dubious identification evidence", *Perry v. New Hampshire*, – U.S. –, 132 S. Ct. 716, 729 (2012).  **Our petitioner, however, has not shown that the California Court of Appeal ruled contrary to Supreme Court precedent in deferring to the jury's acceptance of Sanchez's out-of-court identification of petitioner *in light of the other ample evidence identifying petitioner*.** Namely, as the Magistrate points out, both Sanchez and fellow park employee Arrieta testified that they saw petitioner at the park on the afternoon of the murder; Arrieta testified that petitioner had said he was looking to "cap" (i.e., shoot) people who had tattoos, and the victim had tattoos on his arms and hand; park director Enriquez testified that petitioner, who is known as Richard, resembled the man who identified himself to Enriquez on the afternoon of the murder as Richie Boy; and a bicycle found at the scene bore petitioner's fingerprint and the name of petitioner's brother, Joe.  *See* R&R at 18-19 (record citations omitted).  As another member of this court reasoned in rejecting a similar section 2254 habeas claim regarding identification evidence,

> The Court recognizes that the victim testified at trial that he was not certain about his identification of petitioner.  However, the police investigator testified that the victim clearly identified Petitioner at the time of the photo lineup as one of the individuals who stole the victim's car.  The issue was therefore fairly and appropriately presented to the jury to evaluate the

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ____jmb____

credibility of those witnesses and the reliability of the identification of Petitioner.  The jury could legitimately have disbelieved the victim at trial (who essentially recanted his earlier identification of Petitioner) in favor of the police officer who administered the [photographic] array to the victim shortly after the crime.

*Peete v. Cates*, 2013 WL 4013311, *4 (C.D. Cal. July 31, 2013) (Morrow, J.); *cf. also Trigueros v. Adams*, 2013 WL 3157518, *12 (C.D. Cal. June 20, 2013) (denying section 2254 petition) (despite weaknesses in each of the three eyewitness identifications of petitioner as the shooter, including the fact that "the person who identified petitioner before trial was hesitant to testify against Petitioner and was uncertain in her pre-trial identification" and "the witness who actually identified Petitioner at trial was unable to pick him from a photographic lineup before trial", "the combined weight of the three identifications provided persuasive evidence of [hi]s guilt.").

ANALYSIS:  PETITIONER'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE THAT HE AIDED AND ABETTED FIRST-DEGREE MURDER LACKS MERIT

**For the reasons stated by the Magistrate, the California Court of Appeal did not commit AEDPA error in rejecting his claim that the evidence presented at trial was insufficient to convict him on an aiding-and-abetting theory.**  To secure habeas relief on this claim, petitioner had to show that it was objectively unreasonable for the state appellate court to conclude that a rational jury could have found that petitioner acted with knowledge of codefendant Aguirre's unlawful purpose to premeditatedly and deliberately kill the victim, acted with the intent or purpose of committing, encouraging, or facilitating the commission of the murder, and that he by act or advice aided, promoted, encouraged or instigated the murder, *see* R&R at 19 (citing California state decisions on elements of aiding and abetting first-degree murder).

There was competent evidence presented at trial that petitioner and Aguirre were members of the same gang, that the gang's turf included the very park where the murder occurred, that petitioner had told the park director right before the murder that petitioner was looking to kill tattooed people in the park who might be rival gang members, that he and Aguirre (who was armed with a firearm) approached a vehicle on their turf that was occupied by the victim, a person who had tattoos and was otherwise unknown to them.  *See* R&R at 19-20.  There was also evidence presented at trial that petitioner entered the passenger side of the vehicle and beat the victim while Aguirre approached the driver's-side window, and that petitioner got out of the vehicle and joined Aguirre

MINUTES FORM 90                                      Initials of Deputy Clerk  ____jmb____
CIVIL - GEN

as Aguirre shot the victim at point-black range.  *See* R&R at 20.  No Supreme Court precedent suggests that that evidence was insufficient for a rational jury to find the elements of aiding and abetting first-degree murder under California law.  *Cf. Daly v. Chavez*, 2013 WL 5951932, *14 (C.D. Cal. Nov. 5, 2013) (denying 2254 petition and upholding state court's determination that evidence was sufficient to support conviction for attempted murder and an enhancement for great bodily injury under California law).

**For the reasons stated by the Magistrate (R&R at 20-25), petitioner fails to show that the Court of Appeal committed AEDPA error on appeal by rejecting his claim that the evidence was insufficient to support the gang enhancement.**  Petitioner focuses on an alleged lack of evidence to support the finding that he was a member of the Avenues gang, complaining that gang expert Morales's opinion that petitioner was an Avenues member was based on only four facts – petitioner lived in Avenues territory, codefendant/shooter Aguirre had a photo of petitioner in his bedroom, petitioner said while in Avenues territory that he was looking for men with tattoos in order to shoot them, and petitioner glared at the victim when the victim was in the park, *see* Pet at 36.  Without citing authority, petitioner boldly asserts that "[i]f the State failed to prove either defendant was a member of the Avenues gang, the entire theory of the States's case fails."  Pet at 36.  But as the Magistrate notes, California law does not predicate the gang enhancement on proof that the defendant was a gang member or associate, as someone who is not a member or associate can still commit an unlawful act for the benefit of, in association with, or at the direction of a gang.  *See* R&R at 21-22 (citation omitted); *see also Van Pool v. Keenan*, 2010 WL 282532, *14 (C.D. Cal. Jan. 22, 2010) (Wu, J.) (citing same California decision), *aff'd*, 513 F. App'x 653 (9th Cir.), *cert. denied sub nom. Van Pool v. Johnson*, – U.S. –, 134 S. Ct. 483 (2013).

**Moreover, the totality of the evidence, including but going far beyond the expert's opinion that petitioner was an Avenues member, was sufficient to permit a rational jury to find the gang enhancement true:**  there was testimony that petitioner told the park director he was looking for someone tattooed to "cap" (shoot) at the park that day and that either petitioner or Aguirre yelled out the name of the Avenues gang as petitioner attacked the victim and Aguirre shot the victim, and that Avenues members threatened one of the eyewitnesses shortly after the murder, R&R at 22; *see, e.g., Trotter v. Lopez*, 2011 WL 2078891, *14-*16 (E.D.

MINUTES FORM 90                                 Initials of Deputy Clerk    jmb
CIVIL - GEN

Cal. May 25, 2011) (state court did not unreasonably apply clearly established federal law by determining that evidence was sufficient to support gang enhancement), *aff'd*, 481 F. App'x 353 (9th Cir. 2012).[3]

   **Finally as to the gang enhancement, which was supported in part by the gang expert's opinion that petitioner was a gang member (not necessary to the enhancement but arguably helpful to the case for the enhancement), petitioner alleges that the expert, himself a police officer assigned to monitor the Avenues and other gangs, "personally wanted to convict** [petitioner] and Aguirre." Pet Mem at 21. But as the Magistrate recounts, the gang expert had substantial experience with gangs, *see* R&R at 23-24, and it was the province of the jury to assess the credibility and motives of the gang expert as they would with any other witness, and no Supreme Court precedent required the state appellate court to determine that no rational jury could have believed the expert in light of the expert's alleged bias. Another member of our court reasoned similarly in *Reyes v. Gonzales*, 2010 WL 316806 (C.D. Cal. Jan. 22, 2010), stating,

> Petitioner also challenges the magistrate judge's resolution of petitioner's claim . . . [regarding the] purported insufficiency of the evidence supporting the jury's finding that petitioner's crimes were gang-related.  In particular, petitioner faults the Magistrate Judge for relying on the

---

3

   *Cf. Fregoso v. Kramer*, 2009 WL 1025569, *26 (C.D. Cal. Apr. 10, 2009) ("Vasquez and Fregoso [petitioner] injected their gang status into the crime by . . . throwing P.A.L. hand signs . . . ."). On this record, it was not objectively unreasonable to conclude that a rational jury could credit the gang expert's well-founded opinion that such concerted action was consistent with gang activity and would generate fear and intimidation and thereby benefit the Avenues gang. *See* R&R at 23 (citation omitted);

   *Rodriguez v. Biter*, 2013 WL 2351291, *12 (C.D. Cal. May 16, 2013) (Fairbank, J.) (denying 2254 claim directed at the sufficiency of the evidence to sustain a gang enhancement) ("As the Court of Appeal noted, evidence also was presented that petitioner warned the victim that he would face retaliation if he reported the crimes, and the gang expert testified that such a threat tended to increase [the gang]'s control in the area.");

   *Quiles v. Knowles*, 2009 WL 4574184, *6 (C.D. Cal. Nov. 16, 2009) (Fairbank, J.) (denying 2254 claim directed at the sufficiency of the evidence to sustain a gang enhancement and stating that jury was entitled to rely on gang expert's opinion that "the crimes were committed to benefit Maravilla [a gang]" because, among other things, "they were committed outside Maravilla territory in a rival gang neighborhood, which would command greater respect for the gang and instill fear in others . . . .").

MINUTES FORM 90                                    Initials of Deputy Clerk ____jmb____
CIVIL - GEN

testimony of E.F. . . . .   That testimony, according to petitioner, was unreliable because E.F. had a reason to fabricate his testimony.  To the extent that the jury credited E.F.'s account, no error occurred.  * * *  It is the province of the trier of fact to determine the credibility of witnesses, . . . .") (citations and internal quotation marks omitted).

*Id.* at *1.

**Petitioner's third insufficient-evidence claim fails as well.**  The Magistrate correctly identifies evidence presented at trial from which (the state court could reasonably conclude) a rational jury could find the third element of aiding and abetting first-degree murder, i.e., that petitioner had the specific intent to promote, further, or assist in criminal conduct by gang members:  petitioner's statement to park employee Arrieta that he or "we" were looking to "cap"[4] people at the park who had tattoos, petitioner's glaring at a man whom he did not know who was in that park, *which the Avenues claimed as their turf*, and petitioner's joint concerted effort with Aguirre to attack and kill the victim.  *See* R&R at 23; *cf. German v. Horel*, 473 F. App'x 810, 811 (9th Cir. 2012) ("Here, the testimony of a gang expert regarding, among other things, how a gang might benefit from committing attacks on others was sufficient to support the gang enhancement."), *cert. denied*, – U.S. –, 133 S. Ct. 954 (2013).   Under California state law as applied by California federal courts, the fact that Aguirre was a member of the gang also helps to render the evidence sufficient to prove beyond a reasonable doubt that petitioner had the specific intent to promote, further, or assist criminal conduct by gang members.  *See Jake v. Felker*, 481 F. App'x 385, 325 (9th Cir. 2012) ("In its interpretation of the second prong of § 186.22(b)(1), the California courts have held that 'if substantial evidence establishes that the defendant intended to and did commit the charged felony with known

---

4

Both federal and California state courts have recognized or heard testimony that "cap" is commonly used slang for "shoot."  *See Sarausad v. Porter*, 479 F.3d 671, 680-81 (9th Cir. 2007) ("He testified that an unidentified person in the back seat asked 'Are we going to cap?' immediately before Ronquillo began to shoot."), *vac'd in part on denial of reh'g en banc*, 503 F.3d 822 (9th Cir. 2007), *rev'd & remanded on other grounds*, 555 U.S. 179, 129 S. Ct. 823 (2009); *US v. Skillman*, 922 F.2d 1370, 1372 (9th Cir. 1990) ("Skillman told him:  '. . . if he had friends he could have trusted more . . . he'd have popped a few caps at them; also meaning shoot a gun.'"); *Moreland v. Felker*, 2012 WL 1413590, *2 (C.D. Cal. Mar. 30, 2012) ("The driver told Valenzuela that if he did not get the money, 'they were gonna cap [him]. ' Valenzuela understood that to mean they would shoot him."), *R&R adopted*, 2012 WL 1416611 (C.D. Cal. Apr. 20, 2012) (John Walter, J.).

MINUTES FORM 90                                              Initials of Deputy Clerk ____jmb____
CIVIL - GEN

members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members.'") (quoting *People v. Albillar*, 51 Cal.4th 47, 68, 244 P.3d 1062, 119 Cal.Rptr. 3d 415 (2010)).

### ANALYSIS:  INSTRUCTIONAL-ERROR CLAIM AGAINST CALCRIM No. 318 LACKS MERIT

**For the reasons stated by the Magistrate (R&R at 25-29), petitioner fails to show that the Court of Appeal committed AEDPA error by rejecting his instructional-error claims.**  Petitioner first challenges the delivery of CALCRIM No. 318 – which instructed the jurors that when they found that a witness had made a certain out-of-court statement, they could use those statements in two ways: to evaluate whether the witness's in-court testimony was believable, and as evidence that the information in the earlier out-of-court statement was true – contending that it impermissibly lowered the prosecution's burden of proof by creating a presumption that out-of-court statements are true and deserving of greater belief than in-court statements, *see* R&R at 25-26.

**It is true, as the Magistrate recognizes, that a State may not convey evidentiary presumptions through jury instructions which have the effect of relieving the prosecution of its constitutional burden** of proving every element of the crime beyond a reasonable doubt.  *See* R&R at 26 (citing *Francis*, 471 U.S. at 313); *see also Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830 (2004).  But as the Magistrate also recognizes, a *permissive* inference instruction does not lessen the prosecution's burden of proof unless there is no rational way the jury could make the connection permitted by the inference instruction.  *See* R&R at 26 (citing *Allen*, 442 U.S. at 157, and *Warren*, 25 F.3d at 897 n.4); *see also Tot v. US*, 319 U.S. 463, 467-68, 63 S. Ct. 1241 (1943) (for a jury instruction which establishes a permissive inference to pass constitutional muster, there must be a "rational connection between the fact proved and the ultimate fact presumed", a connection grounded in "common experience").  *See, e.g., Rodriguez v. Barnes*, 2014 WL 1473651, *12 (C.D. Cal. Apr. 15, 2014), where Judge Wu of our Court denied a section 2254 habeas petition and cogently reasoned as follows:

The Court does not find that the admission of the jail-attack evidence rendered Petitioner's trial so fundamentally unfair as to violate due process.  This Court agrees with the California court of Appeal's conclusion that there were permissible inferences which could be drawn from the evidence, as the attack on Garcia was relevant to Petitioner's consciousness of guilt and the jury's determination of Garcia's credibility.

Furthermore, any possible harm was mitigated by the jury instructions, which informed the jury that it could only consider the incident as evidence of intent, identity, or motive, not as evidence of Petitioner's bad character or propensity to commit crime.  A jury is presumed to follow the instructions given to it in reaching its verdict.  Because there were permissible inferences the jury could draw from the jail-attack evidence, the evidence did not render petitioner's trial fundamentally unfair and there was thus no due process violation.

*Rodriguez*, 2014 WL 1473651 at *12 (internal citation omitted) (paragraph break added).

**The Magistrate is right that this instruction does not admit of the interpretation that it required the jury to infer that a witness's out-of-court statements are true** or that such statements are somehow necessarily more reliable than the witness's subsequent in-court statements.  As the Court of Appeal reasoned,

CALCRIM No. 318 informs the jury that it may reject in-court testimony if it determines inconsistent out-of-court statements to be true.  By stating that the jury "may" use the out-of-court statements, the instruction does not require the jury to credit the earlier statements even while allowing it to do so.

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ____jmb_____

-18-

*People v. Hudson*, 175 Cal. App.4th 1025, 96 Cal. Rptr.3d 713 (Cal. App.2009), *rev. denied* (Cal. Oct. 19, 2009), *cited with approval by Lewis v . California*, 2012 WL 487194, *10-*11 (E.D. Cal. Feb. 7, 2012), *R&R adopted*, 2012 WL 968128 (E.D. Cal. Mar. 21, 2012).  *Accord Butts v. Cate*, 2012 WL 1309184, *6 (N.D. Cal. Apr. 16, 2012) (state court did not unreasonably apply Supreme Court law in rejecting claim that CALCRIM 318 violated due process rights "by creating an improper permissive inference that altered the burden of proof", reasoning that 318 "does not 'compel the jury to accept out-of-court statements', nor does it 'create a presumption of truthfulness of the out-of-court statements'", especially given that the court also delivered CALCRIM 220, which reiterated the prosecution's burden of proving all elements beyond a reasonable doubt and directed the jury to consider "all evidence" in determining whether prosecution had carried that burden) (citation omitted).

      **This is particularly so in light of the other instructions**, which directed the jury that the prosecution had to prove all elements beyond a reasonable doubt and that, in determining whether the prosecution had done so, the jury had to impartially compare and consider all the evidence presented at trial and "among [other] factors" consider whether the witness made a statement in the past that was consistent or inconsistent with his in-court testimony.  *See* R&R at 26-27; *see also, e.g., Casner v. Valenzuela*, 2013 WL 4041824, *18 (E.D. Cal. Aug. 7, 2013) (denying section 2254 petition) ("In light of the totality of the instructions concerning the burden of proof and evaluation of the credibility of witnesses, the Court concludes it was not reasonably likely that the jury understood CALCRIM No. 318 to create a presumption or modify the burden of proof."); *Butts,* 2012 WL 1309184 at *6 (it was not reasonably likely that the jury would understand CALCRIM No. 318 to erect an impermissible inference or lower the prosecution's burden of proof where the court also delivered CALCRIM No. 220, which reiterated the prosecution's burden of proving all elements beyond a reasonable doubt and directed the jury to consider "all evidence" in determining whether the prosecution had carried that burden) (citing *Solarzano v. Small*, 2012 WL 1076099, *20 (E.D. Cal. Mar. 29, 2012)).

<u>ANALYSIS:  INSTRUCTIONAL-ERROR CLAIM AGAINST CALCRIM No. 400 LACKS MERIT</u>

      **Lastly, for the reasons stated by the Magistrate, the Court of Appeal did not rule contrary to or unreasonably apply any U.S. Supreme Court holding in rejecting the claim that CALCRIM No. 400**

MINUTES FORM 90                      Initials of Deputy Clerk     jmb
CIVIL - GEN

**violated his due process right to a fair trial.**  As delivered by the Superior Court here, that instruction states, in pertinent part, "A person may be guilty of a crime in two ways.  One, he may have directly committed the crime.  Two, he may have aided and abetted someone else, who committed the crime.  *I will call that other person the 'perpetrator.'  A person is equally guilty of the crime whether he committed* it personally or aided and abetted the perpetrator who committed it."  R&R at 27-28 (quoting CT 435) (emphasis added).

According to petitioner, the reference to a "perpetrator" who "committed" a crime implied that a crime was actually committed, when that issue was for the jury to determine, *see* R&R at 28 (citing Pet at 6).  The Magistrate rightly concludes that CALCRIM 400 does not reasonably admit of such an interpretation, because it merely instructed the jury about the ways in which a person "may" be guilty of a crime.  *See* R&R at 28.

Moreover, the Magistrate persuasively reasons that it is not reasonably likely that the jury understood CALCRIM 400 to obviate or modify the prosecution's burden of proving every element of first-degree murder as an aider and abettor beyond a reasonable doubt when No. 400 is considered in the context of the other jury instructions given at petitioner's trial.  Specifically, the state trial court instructed the jury that the prosecution was required to prove that the perpetrator committed the crime before it could convict someone else as an aider and abettor (CALCRIM 401), that the prosecution was required to prove every element beyond a reasonable doubt (CALCRIM 422), and that the jury was required to decide each charge separately (CALCRIM 203).  *See* R&R at 28 (record citations omitted). As Judge Otero of our court reasoned in denying a similar section 2254 claim against the state trial court's use of CALCRIM No. 400,

> CALCRIM No. 401 explained that an aider and abettor had to know the unlawful purpose of the perpetrator, intend to encourage or facilitate the commission of the crime and by act or advice, aids or encourages the commission of the crime.  CALCRIM Nos. 520 and 521 instructed the jury about the need to prove malice aforethought and the definition of first-degree murder. The instructions essentially informed the jury that it had to find [petitioner] knew that [principal] intended to commit first[-]degree murder, [that petitioner] intended to aid and abet that crime and did so.  Therefore, it was not reasonably likely that it convicted just based on Jones's guilt.

*Britt v. Hedgpeth*, 2013 WL 2154156, *16 (C.D. Cal. May 15, 2013) (adopting and quoting Court of Appeal's reasoning) (citing *People v. Prettyman*, 14 Cal.4th 248, 272, 58 Cal. Rptr.2d 827, 926 P.2d 1013 (Cal. 1996))).

Similarly, in *Sung Hong v. Lewis*, 2011 WL 6817027, *12 (C.D. Cal. Dec. 5, 2011), *R&R adopted*, 2011 WL 6821551 (C.D. Cal. Dec. 28, 2011) (Feess, J.), the federal habeas court held that even though CALCRIM 400 "had the potential", under the circumstances, "to suggest that [petitioner]'s liability for murder – as an aider and abetter – was 'equal' to that of [the principal], the stabber, whether or not he shared the same mental state as [the principal]", habeas relief was not warranted because "[t]he jury was not instructed with CALCRIM No. 400 in a vacuum. Instead, "the trial court included other instructions which correctly and adequately described the mental state required to find [petitioner] guilty." *Sung Hong*, 2011 WL 6817027 at *12. *Cf. People v. Mejia*, 211 Cal. App.4th 586, 149 Cal. Rptr.2d 815 (Cal. App. 2012) (holding that any ambiguity in the pattern jury instruction on aiding and abetting was cured by second pattern instruction's statement that the aider and abettor must know of, and intend to assist, the perpetrator's unlawful purpose), *review denied* (Cal. Mar. 20, 2013).[5]

---

[5]

In *Sawyer v. Yates*, 2010 WL 2261320, *9 (C.D. Cal. Mar. 15, 2011), *R&R adopted*, 2011 WL 2261475 (C.D. Cal. June 7, 2011) (Otero, J.), the federal habeas court adopted the California Court of Appeal's holding that, as a matter of California state law, "'CALCRIM No. 400 misdescribes the prosecution's burden in proving the aider and abettor's guilt of first-degree murder by eliminating its need to prove the aider and abettor's (1) intent, (2) willfulness, (3) premeditation, and (4) deliberation, the mental states for [first-degree] murder.'"

Nonetheless, the federal court held that the error in *Sawyer* was harmless beyond a reasonable doubt "because the jury necessarily resolved these issues against [petitioner] under other instructions." *Id.* (citing *People v. Stewart*, 16 Cal.3d 133, 141, 127 Cal. Rptr. 117, 544 P.2d 1317 (Cal. 1976)). Federal habeas relief was not warranted because "[t]he instructions as a whole" – including CALCRIM No. 401 (another aiding and abetting instruction), CALCRIM No. 521 (instructing the jury that "appellants acted willfully if they intended to kill"), and CALCRIM No. 702 (instructing the jury that "if the defendant was not the actual killer, the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill . . . .") – "the instructions as a whole correctly advised the jury [that] it might find Petitioner guilty of a lesser offense even if one whom the petitioner aided and abetted in committing the target offense was guilty of first[-]degree murder." *See Sawyer*, 2010 WL 2261320 at *10 and *11.

The court found it significant that Sawyer's jury was instructed on both first- and second-degree murder, was told that liability for murder required proof not only that Sawyer intentionally committed the prohibited act, but also that Sawyer did so with a specific intent of mental state, namely "malice aforethought", knowledge that the perpetrator intended to commit the crime, and an intent by Sawyer before or during the commission of the

**As the Magistrate notes, juries are presumed to be able to understand and follow the trial court's instructions.** *See* R&R at 28 (citing *Weeks*, 528 U.S. at 234); *see also Evans v. Michigan*, – U.S. –, –, 133 S. Ct. 1069, 1080 (2013) (citing *Blueford v. Arkansas*, 566 U.S. –, –, 132 S. Ct. 2044, 2051 (2012) (citing *Weeks*))), "and the presumption is a 'strong['' one", *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. **2014**) (citing *US v. Dorsey*, 677 F.3d 944, 955 (9th Cir. 2012), *cert. denied*, – U.S. –, 133 S. Ct. 2850 (2013)). "[P]etitioner has failed to adduce any evidence that the jury did not do so in his case." *Vega v. Cate*, 2014 WL 1498156, *14 (C.D. Cal. Apr. 15, 2014) citations omitted); *see also Nero v. Vasquez*, 2014 WL 1289723, *16 (C.D. Cal. Mar. 27, 2014) ("Petitioner has provided the Court with 'no reason to believe that the jury in this case was incapable of obeying the [trial court's] instructions' . . . .") (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8, 107 S. Ct. 3102 (1987). Therefore, it was not an unreasonable application of Supreme Court precedent for the state appellate court to conclude that the jury would follow the cautionary instructions given and therefore was not reasonably likely to interpret CALCRIM 400 to lower the prosecution's burden of proof.

<u>PETITIONER IS NOT ENTITLED TO A CERTIFICATE OF APPEALABILITY</u>

Absent a COA, "an appeal may not be taken from a final decision of a district judge in a habeas corpus proceeding or a proceeding under 28 U.S.C. § 2255", *Chafin v. Chafin*, – U.S. –, 133 S. Ct. 1017, – (2013) (Ginsburg, J., joined by Scalia & Breyer, JJ., concurring), or from a district judge's final order in a § 2254 proceeding,[6] [7] and "'[t]he district court must issue or deny a [COA] when it enters a final order adverse to the applicant'", *Cleveland v. Babeu*, 2013 WL 2417966, *3 (C.D. Cal. May 29, 2013) (Fairbank, J.) (quoting Rule 11(a) of Rules Governing § 2254 Cases). The court must consider each claim separately, *Mayfield v. Woodford*,

---

crime to aid and abet the perpetrator in committing the crime. *See Sawyer*, 2010 WL 2261320 at *11.

[6]

*See also* 9th Cir. R. 22-1(e) (appellants "shall brief only issues certified by the district court or the court of appeals") and R. 22-1(f) (appellees "need not respond to any uncertified issues").

[7]

"There is an exception not applicable here: 'a COA is not required to appeal an order denying a motion for federally appointed counsel.'" *Fisher v. Barrios*, 2014 WL 1512186, *4 n.8 (C.D. Cal. Apr. 15, 2014) (Fairbank, J.) (quoting *Harbison v. Bell*, 556 U.S. 180, 194, 129 S. Ct. 1481, 1491 (2009)).

MINUTES FORM 90                                      Initials of Deputy Clerk ____jmb____
CIVIL - GEN

270 F.3d 915, 922 (9th Cir. 2001) (citation omitted)), which means the court may grant a COA on one claim and not on others.  *See, e.g., Brown v. Clark*, 2011 WL 2259130, *1 (C.D. Cal. June 6, 2011) (granting COA on Confrontation Clause claim but not other claims), *aff'd*, 477 F. App'x 430 (9th Cir. 2012).[8]

    In practice, "[i]t is a 'rare step' for a district court to issue a COA," *McDaniels v. McGrew*, 2013 WL 4040058, *3 (C.D. Cal. Aug. 8, 2013) (Fairbank, J.) (quoting *Murden v. Artuz*, 497 F.3d 178, 199 (2d Cir. 2007) (Hall, J., concurring in judgment)).  A COA may issue only if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Shoemaker v. Taylor*, – F.3d –, 2013 WL 3988678, *11 (9th Cir. 2013) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Henry v. Ryan*, 720 F.3d 1073, 1085 (9th Cir. 2013) (citing *Slack* and *Lambright*).  " The Court is mindful that it 'must resolve doubts about the propriety of a COA in the petitioner's favor'", *Romero v. Lewis*, No. CV 5:11-01426, slip op. at 3 (C.D. Cal. Sept. 13, 2013) (Fairbank, J.) (quoting *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2012) (citing *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc))), but no such doubt exists here.  Reasonable jurists would not find it debateable that the California appellate court's rejection of petitioner's claims for lack of merit was neither contrary to nor an unreasonable application of any U.S. Supreme Court holding.  In the posture of this case, none of petitioner's claims is "adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3385 n.4 (1983).

### **ORDER**

    The Report and Recommendation [Doc # 14] is **ADOPTED** without objection.

    The 28 U.S.C. § 2254 habeas corpus petition [Doc # 1]  is **DENIED**.

---

    8

    The Court of Appeals may also grant a COA on claims for which the district court expressly refused to grant a COA.  *See, e.g., Sully v. Ayers*, 725 F.3d 1057, 1067 (9th Cir. 2013), *pet. cert. filed o.g.* (U.S. Feb. 12, 2014) (No. 13-8821).

MINUTES FORM 90                                         Initials of Deputy Clerk   ____jmb____
CIVIL - GEN

A Certificate of Appealability is **DENIED**.[9]  This is a final order, but it will not be appealable if petitioner fails to obtain a certificate of appealability from the U.S. Court of Appeals.[10] [11]

_____

[9]

"Although a litigant may ask a district court to reconsider its denial of a COA, *see, e.g., Ho v. Carey*, 332 F.3d 587, 590 (9th Cir. 2003), 'the denial of a COA is not in itself appealable' to the Court of Appeals." *Romero v. Lewis*, No. CV 5:11-01426, op. at 3 n.3 (C.D. Cal. Sept. 13, 2013) (Fairbank, J.) (quoting *Cannan v. Hutchens*, 479 F. App'x 756 (9th Cir. 2012) (citing *Greenawalt v. Stewart*, 105 F.3d 1268, 1272 (9th Cir. 1997) (per curiam), *abrogation o.g. recog'd by Jackson v. Roe*, 425 F.3d 654, 658-61 (9th Cir. 2005))). *Accord Stevens v. Curtis*, 2010 WL 2651592, *7 n.3 (W.D. Mich. June 30, 2010) (Paul Lewis Maloney, Chief Judge) (citing, *inter alia*, *Sims v. US*, 244 F.3d 509, 509 (6th Cir. 2011)).

[10]

*See Korn v. US*, 2013 WL 1163941, *18 (C.D. Cal. Mar. 20, 2013) (Fairbank, J.) (citing *Muth v. Fondren*, 676 F.3d 815, 822 (9th Cir.) (citing § 2253(c)(1)(B)), *cert. denied*, – U.S. –, 133 S. Ct. 292 (2012)); *see also* FED. R. APP. P. 22(b)(1) (if district judge denies a COA, applicant may request a COA from circuit).

[11]

Even if petitioner could otherwise satisfy the requirements for a COA, he still might not be allowed to appeal from this Order.  "Published Ninth Circuit authority holds that a party who fails to file objections to an R&R in the district court thereby forfeits his right to appeal the district judge's order adopting the R&R." *Duncan v. Coldwell Banker*, 2014 WL 1630653, *5 n.3 (C.D. Cal. Apr. 21, 2014) (Fairbank, J.).

In *McCall v. Andrus*, 628 F.2d 1185 (9th Cir. 1980), the Ninth Circuit held that it would not consider an issue on appeal where the appellant failed to raise that issue in his opening brief on appeal (waiting until his reply) *and* failed to file any objection with the District Judge to the Magistrate's analysis of the issue.  "The panel's wording makes clear that the failure to object to the R&R was an independent basis for refusing to hear the appeal.  In other words, the panel did *not* hold merely that a party waives its right to appeal when it *both* fails to object to an R&R *and* fails to raise an issue in its opening appellate brief; its holding was broader than that." *Rojas v. Holland*, No. ED CV 13-292 Doc. 21 at 10-11 n.7 (C.D. Cal. Apr. 3, 2014) (Fairbank, J.).  The *McCall* panel stated,

> McCall did not raise his contention that the ten-acre rule exceeded the Secretary's authority in his opening brief.  We will ordinarily not consider issues raised for the first time in a reply brief. Further, *McCall did not object to the Magistrate's determination that the trial court find [that] the rule was neither discredited, unreasonable nor unsound in its concept.  Such a failure to bring the issue before the trial court bars McCall from raising it here.*

*McCall*, 628 F.2d at 1187 (emphasis added).

"Numerous subsequent Ninth Circuit panel decisions have accorded interpretations to *McCall* which

As required by FED. R. CIV. P. 58(a)(1), final judgment will be issued as a separate document.[12]

IT IS SO ORDERED.

---

differ from this Court's interpretation and from each other.  Some subsequent panels have simply refused to follow *McCall* even though it has never been modified or overruled by the circuit sitting en banc." *Cornish v. Brazleton*, 2014 WL 1457768, *2 n.5 (C.D. Cal. Apr. 15, 2014) (Fairbank, J.).  *See, e.g., US v. Willis*, 431 F.3d 709, 713 n.4 (9th Cir. 2005) ("waiver [of the right to appeal] is appropriate where a party's failure to object to a magistrate's conclusions of law was coupled with its failure to raise the objection until its reply brief [in the circuit court]."); *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998) ("Failure to object to a magistrate judge's recommendation waives all objections *to the magistrate judge's findings of fact*" only, but does not necessarily waive the right to appeal the district court's adoption of the Report's legal determinations); *Martinez v. Ylst*, 951 F.2d 1153, 1156 n.4 (9th Cir. 1991) (internally citing *Greenhow v. HHS*, 863 F.2d 633, 635 (9th Cir. 1988)).

"Because *McCall* is the earliest panel decision in question, it prevails over later panel decisions to the extent that they cannot be reconciled."  *Cornish*, 2014 WL 1457768 at *2 n.5 (citing, *inter alia*, *Posey v. Harrington*, 2014 WL 1289604, *1 (C.D. Cal. Mar. 31, 2014) ("[W]hen a subsequent three-judge-panel opinion conflicts with the opinion of an earlier three-judge panel, it is the earlier decision that controls.") (citing *Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011)).  *Accord King v. Taylor*, 694 F.3d 650, 661 n.7 (6th Cir. 2012) (Richard Allen Griffin, J.).  "Thus, it would appear that under *McCall*, petitioner's failure to file objections to the R&R waived his right to appeal from this order adopting the R&R."  *Cornish*, 2014 WL 1457768 at *2 n.5.

12

*See Cox v. California*, 2013 WL 3755956, *2 n.2 (C.D. Cal. July 16, 2013) (Fairbank, J.) (citing *Jayne v. Sherman*, 706 F.3d 994, 1009 (9th Cir. 2013) and *Stratton v. Buck*, 697 F.3d 1004, 1007 (9th Cir. 2012)); *see also Bravo v. City of Santa Maria*, 665 F.3d 1076, 1079 n.5 (9th Cir. 2011).  *Accord In re Taumoepeau*, 523 F.3d 1213, 1217 (10th Cir. 2008) ("A combined document denominated an 'Order and Judgment,' containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's prescription.").

MINUTES FORM 90                                        Initials of Deputy Clerk ____jmb____
CIVIL - GEN